# IN THE UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
# PEORIA DIVISION

| | |
|---|---|
| KURT BEATHARD,<br><br>     Plaintiff,<br><br>v.<br><br>LARRY LYONS, in his individual and official capacity as Director of Athletics at Illinois State University, and BROCK SPACK, in his individual and official capacity as Head Football Coach at Illinois State University,<br><br>     Defendants. | Civil Action No.<br><br>**COMPLAINT**<br><br>**(Jury Trial Demanded)** |

## INTRODUCTION

1. Kurt Beathard ("Beathard") is suing Larry Lyons and Brock Spack ("Defendants" unless identified separately) pursuant to 42 USC § 1983. In 2020, Beathard was a football coach at Illinois State University ("ISU"), a public university governed by the First Amendment. **Defendants terminated Beathard for one reason and one reason only: He did not toe the party line regarding the Black Lives Matter organization.** Specifically, after someone put a Black Lives Matter poster on Beathard's office door, he replaced it with a poster that expressed his own religious and political views. Defendants' decision to terminate Beathard because of his poster is classic First Amendment retaliation/viewpoint discrimination. Beathard seeks declaratory and injunctive relief; nominal damages; compensatory damages; reinstatement with backpay; punitive damages; and attorney fees, expense, and costs pursuant to 42 USC § 1988.

## II.

## JURISDICTION AND VENUE

2. This Court has jurisdiction to hear and decide all issues presented in this case pursuant to 28 USC §§ 1331, 1343, and 1367, this case being predicated upon a federal question and the enforcement of certain federal constitutionally protected rights as guaranteed by the First and Fourteenth Amendments of the United States Constitution.

3. This Court has authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 USC §§ 2201 and 2202.

4. Venue is proper in this Court pursuant to 28 USC § 1491(b), as Beathard resided at all times relevant, and Defendants reside, within this federal district. Moreover, Defendants' wrongful conduct took place within this federal district.

## III.

## PARTIES

### *PLAINTIFF*

*5.* Beathard is an adult citizen and resided at all times relevant in Normal, McLean County, Illinois and is a former employee of ISU.

### *DEFENDANTS*

6. Defendant Larry Lyons ("Lyons") is an adult citizen and resides in Normal, McLean County, Illinois and was the Director of Athletics at ISU. At all times relevant, Lyons acted under color of state law and is sued in his individual and official capacities.

7. Defendant Brock Spack ("Spack") is an adult citizen and resides in Bloomington, McLean County, Illinois and was the Head Football Coach at ISU. At all times relevant, Spack acted under color of state law and is sued in his individual and official capacities.

## IV.

## FACTS

8. Beathard has been a college football coach for more than twenty-five (25) years.

9. Beathard has coached at Western Carolina University, Bucknell, Eastern Kentucky University, Gardner-Webb University, University of Illinois and ISU.

10. While employed by ISU, Beathard consistently performed his duties to the satisfaction of Defendants and, prior to his termination and the events giving rise to this complaint, had never been subjected to disciplinary action of any kind.

11. In 2014 and 2015, Beathard was at ISU, and his offense set several records, achieved national ranking, and won a share of the Missouri Valley Football Conference Championship.

12. In 2016, Beathard resigned from ISU because of family issues, including his wife's battle with cancer.

13. At the end of the 2017 football season, Spack asked Beathard to return to ISU. Beathard returned.

14. In 2018 and 2019, Beathard's offense was again successful.

15. In late Spring/early Summer 2020, Beathard's wife became very sick with cancer and passed away on 6/13/20.

16. In late Summer 2020, Beathard returned to ISU. The campus community was dealing with tension resulting from the death of George Floyd.

17. By this time, Black Lives Matter was a movement on the ISU campus. Spack brought Beathard up to speed about the atmosphere on campus and informed him that "Black Lives Matter is freaking nuts."

18.     Throughout his career, Beathard has successfully worked with young men of all races. While he believes black lives matter, he is opposed to the Black Lives Matter organization because it was founded by self-described "trained Marxists," it divides human beings by skin color, and it supports violence and property destruction.

19.     During mid-August 2020, ISU's Department of Athletics printed Black Lives Matter posters. Several football coaches put Black Lives Matter posters on their office doors. Someone put a Black Lives Matter poster on Beathard's office door.



20. Beathard removed the Black Lives Matter poster from his office door and replaced it with his own message: "All Lives Matter to Our Lord and Savior Jesus Christ." Beathard's poster was on his office door for less than two (2) weeks.



21. On or about 8/27/20, Lyons addressed ISU's student athletes via zoom. During his address, in a well-intended attempt to foster unity, Lyons stated: "All Redbird Lives Matter." Lyons' statement was not well-received by the student athletes, and he became embroiled in controversy and apologized. (Coincidentally[?], Lyons announced his retirement approximately one (1) month later.)

22.     On or about 8/29/20, Spack came to Beathard's office and asked him to remove his poster – "All Lives Matter to Our Lord and Savior Jesus Christ." After considering Spack's request, Beathard removed his poster, and Spack thanked him.

23.     By 8/30/20, some student athletes had put together a list of demands, one of which was that the Department of Athletics must publicly support Black Lives Matter.

24.     On 8/31/20, the Department of Athletics responded by issuing an "Action Plan for Social Change," wherein it announced its public support for Black Lives Matter. The Plan also promised "education" for Lyons, all athletic administrators, and coaches on "diversity, equity, and anti-racism."

25.     Meanwhile, another coach who wanted to replace Beathard as offensive coordinator had taken a picture of Beathard's poster and shared it with the football players. Apparently, the picture upset some of the football players.

26.     On 9/1/20, some of the football players boycotted practice. Spack came to Beathard's office and informed him that it looked like Lyons was going to keep his job but that Beathard was in trouble over the poster.

27.     On the morning of 9/2/20, Spack called Beathard into his office and informed him that he didn't "like the direction of the offense" and that he was being terminated from his position as offensive coordinator. Spack's explanation was 100% pretext. The offense had thrived under Beathard, and Spack had never complained about the direction of the offense.

28.     Spack's decision to terminate Beathard was authorized and supported by Lyons.

29.     After Spack informed Beathard that he was being terminated from his position as offensive coordinator, Spack literally began walking from office to office asking various coaches

to take Beathard's position. (A highly unusual method of replacing your offensive coordinator.) Beathard was ultimately replaced by two (2) coaches.

30. Beathard was then reassigned to a completely bogus and made-up position, where he worked from home until his contract ran out at the end of 2020. Beathard's contract was not renewed.

31. It is important to note here that ISU is a public school; it is funded by taxpayers.

32. Thus, ISU and its officials are governed by the First Amendment. They cannot force their employees to adopt the party line on issues of public concern, including the Black Lives Matter organization, nor can they control their employees' expression of religious and political views.

33. As an ISU employee, Beathard had a right to express his religious and political views not only under the First Amendment but also under ISU policy. Specifically, ISU has long adopted an Anti-Harassment and Non-Discrimination Policy which provides:

> Illinois State University … is strongly committed to the ethical and legal principal that **each member of the University Community enjoys the right to free speech**. The right of free expression and the open exchange of ideas stimulates debate, promotes creativity, and is essential to a rich learning environment… As members of the University Community, **students**… **and staff have a responsibility to respect others and show tolerance for opinions that differ from their own...**

34. Rather than throwing Beathard under the bus, Defendants should have shown respect for the First Amendment and ISU policy. Specifically, they should have used Beathard's speech and expression as a teaching moment for any ISU football players who objected to his message, *i.e.* letting them hear differing viewpoints and learn to "show tolerance for opinions that differ from their own", even about the Black Lives Matter organization, and letting them learn about the First Amendment and what it means at a public university. Instead, Defendants taught

the football players that groupthink is paramount and that failure to toe the party line will result in termination.

## V.

## 42 USC § 1983
## VIOLATION OF THE FIRST AMENDMENT

### (Retaliation/Viewpoint Discrimination)

35. Beathard incorporates by reference herein, as fully as though set forth verbatim, the allegations set forth in the preceding numbered paragraphs, and he does further allege as follows.

36. Beathard's poster was constitutionally protected speech/expression. Specifically, Beathard's poster addressed matters of public concern – his religious and political views relating to the Black Lives Matter organization, and he put the poster on his own office door as a private citizen.

37. Defendants' decision to terminate Beathard's employment was in retaliation for his viewpoint on the Black Lives Matter organization. If Beathard had left the Black Lives Matter poster on his office door, he would still be offensive coordinator at ISU. But because he had the audacity to replace it with a poster that expressed his own religious and political views, he was terminated.

38. Defendants' actions have deprived Beathard of and infringed upon his right to free speech as guaranteed by the First Amendment.

39. Defendants' actions have likely had and will continue to have a chilling effect on the exercise of free speech by other employees at ISU.

40. Defendants' actions were intentional and reckless and callously indifferent to Beathard's right to free speech as guaranteed by the First Amendment.

41. As a proximate result of Defendants' actions, Beathard has suffered past and future economic damages in the form of lost income, and Beathard has suffered mental/emotional distress.

42. Beathard is entitled to the following from Defendants: declaratory and injunctive relief as set forth in the prayer below; an award of nominal damages; compensatory damages; reinstatement with backpay; punitive damages to deter future violations of the First Amendment and to reverse the chilling effect of Defendants' action; and attorney fees, costs, and expenses.

### PRAYER FOR RELIEF

WHEREFORE, Beathard respectfully requests that the Court enter judgment against Defendants and provide him with the following relief:

A. A declaration that Defendants' retaliation against Beathard for expressing his religious and political viewpoints regarding the Black Lives Matter organization violated his rights under the First Amendment;

B. A permanent injunction prohibiting Defendants from retaliating against individuals for expressing their religious and political viewpoints in their personal capacities.

C. Nominal damages for Defendants' violation of Beathard's First Amendment rights;

D. Compensatory damages for Defendants' violation of Beathard's First Amendment rights;

E. Reinstatement with backpay;

F. Punitive damages to deter Defendants from future violations of the First Amendment and to reverse the chilling effect of Defendants' actions;

G. Attorney fees, costs and expenses pursuant to 42 USC § 1988; and

H. Such other and further relief as the Court may deem just and proper.

DATED:  November 30, 2021

Respectfully submitted,

By: s/ Douglas A. Churdar						By: s/ Adam W. Ghrist
CHURDAR LAW FIRM						FINEGAN, RINKER & GHRIST
Douglas A. Churdar (Fed. No. 5220)				Adam W. Ghrist (ARDC 6292879)
304 Pettigru Street						111 W. Front Street
Greenville, SC  29601						Bloomington, IL  61701
Phone: (864) 233-0203						Phone: (309) 827-0388
Fax:    (864) 233-3020						Fax: (309) 829-3352
Email: dachurdar@churdarlaw.com				Email:  adam@frglawfirm.com