E-FILED
Thursday, 11 August, 2022  01:30:47 PM
Clerk, U.S. District Court, ILCD

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| KURT BEATHARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:21-cv-01352-JES-JEH |
| | ) | |
| LARRY LYONS, in his individual capacity, | ) | |
| BROCK SPACK, in his individual and | ) | |
| Official capacity as Head Football Coach | ) | |
| at Illinois State University, and | ) | |
| KYLE BRENNAN in his official capacity as | ) | |
| Athletic Director at Illinois State University, | ) | |
| | ) | |
| Defendants. | ) | |

### ORDER AND OPINION

This matter is now before the Court on Defendants' Motion to Dismiss and Memorandum in Support. (Docs. 18, 19). Plaintiff filed a Memorandum in Opposition (Doc. 21) and Defendants have replied. (Doc. 23) For the reasons indicated herein, Defendants' Motion to Dismiss is DENIED.

## I.      BACKGROUND

The following facts are taken from Plaintiff's Complaint, which the Court accepts as true for the purposes of a motion to dismiss. *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015). Plaintiff filed a complaint alleging that he was terminated from his position because of his viewpoint on a matter of public concern—the Black Lives Matter Movement ("BLM"). (Doc. 13 at 1). Plaintiff was employed by Illinois State University ("ISU") as a football coach. (Doc. 13 at 3). In mid-August of 2020, ISU's Athletic Department printed posters for the BLM Movement. (Doc. 13 at 5). Many staff members pasted the poster onto their doors, and one

was pasted onto Plaintiff's office door. (Doc 13 at 5). An image of the poster has been reproduced below:



Plaintiff removed the poster from his door and replaced it with one that embodied his own personal beliefs on the matter. (Doc 13 at 6). An image of Plaintiff's poster ("replacement poster") has been reproduced below:



Plaintiff's poster was pasted on his office door for approximately two weeks without incident. (Doc. 13 at 6). On August 29, 2020, Brock Spack ("Spack"), Head Football Coach, asked Plaintiff to remove the poster from his door. (Doc. 13 at 7). Plaintiff removed the poster and Spack thanked him. (Doc. 13 at 7).

During this time, many players and students at ISU demanded that the Athletic Department publicly support the BLM Movement. (Doc. 13 at 7-8). This demand resulted in missed practices, and a boycott against ISU Athletics after Athletic Director Larry Lyons ("AD Lyons" or "Lyons") stated "All Redbird Lives Matter," to much public backlash from both players and students. (Doc. 13 at 8). On August 30, 2020, an image of the replacement poster on Plaintiff's door was shared with ISU football players. (Doc. 13 at 9). Players continued to boycott practices, and Plaintiff was informed by Spack that he was in trouble for his replacement poster. (Doc. 13 at 9). On September 2, 2020, Plaintiff was terminated from his position as the offensive coordinator because Spack didn't "like the direction of the offense." (Doc. 13 at 9). The decision to terminate Plaintiff was supported by AD Lyons. (Doc. 13 at 9). Plaintiff was placed in a different position where he received the single assignment of researching how other football coaches handled COVID-19. (Doc. 13 at 10). Plaintiff was replaced by two new coaches. (Doc. 13 at 10).

Plaintiff asserts that his termination by Spack and Lyons was direct retaliation for his expressing his viewpoint on the BLM Movement. (Doc. 13 at 12). Further, Plaintiff alleges that by terminating him, Spack and Lyons have infringed upon his First Amendment rights to exercise free speech. (Doc. 13 at 12). Plaintiff asserts that he has been economically damaged in the form of lost income, as well as mental/emotional distress. (Doc. 13 at 13). Plaintiff requests a declaration that Defendants retaliated against him, and that such retaliation violated his First Amendment Rights, a permanent injunction prohibiting Spack and Lyons from retaliating against any individual

who expresses their personal views in an individual capacity, reinstatement with backpay, as well as nominal damages, compensatory damages, punitive damages, attorney fees, expenses, and costs. (Doc. 13 at 13-14).

Defendants Spack, Lyons, and Brennan have moved to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(6)(b) for failure to state a claim. (Doc. 19 at 6). Further, Defendants argue that the University's interest outweigh those of Plaintiff, and that qualified immunity precludes Plaintiff's individual-capacity claims. (*See* Doc. 19). Plaintiff responds by arguing that he was not acting in his official capacity when he pasted the replacement poster on his door, thus Defendants' motion should be denied. Plaintiff asks that the Court deny Defendant's motion to dismiss or, in the alternative, grant him leave to file an amended complaint.

## I.      LEGAL STANDARDS

### Rule 12(b)(6) Motion to Dismiss

A motion to dismiss pursuant to Rule 12(b)(6) challenges whether a complaint sufficiently states a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). A motion to dismiss under 12(b)(6) tests the sufficiency of a complaint, but not the merits of a case. *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a motion to dismiss, the complaint must describe the claim in sufficient detail to put the defendants on notice as to the nature of the claim and its bases, and it must plausibly suggest that the plaintiff has a right to relief. *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007). When considering such motions, courts "construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in her favor." *Tamayo v. Blagovich*, 526 F.3d 1074, 1081 (7th Cir. 2008). A complaint need not allege specific facts, but it may not rest entirely on conclusory statements or

empty recitations of the elements of the cause of action. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A court may grant a motion to dismiss under Rule 12(b)(6) only if a complaint lacks sufficient facts to "state a claim to relief that is plausible on its face." *Iqbal,* 556 U.S. at 678, (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 679. Although a facially plausible complaint need not give "detailed factual allegations," it must allege facts sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. These requirements ensure that a defendant receives "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.

## II.     ANALYSIS

Plaintiff asserts a single count under 42 U.S.C. § 1983, alleging retaliation in violation of his First Amendment right to free speech. To avoid dismissal in this context, a plaintiff must show that (1) an employee's speech was constitutionally protected, and (2) that the employee's protected speech was a motivating factor for the employer's retaliatory action. *Samuelson v. LaPorte Cmty. Sch. Corp*., 526 F.3d 1046, 1053 (7th Cir. 2008). The Court also looks to "whether the employer can show that it would have taken the same action in the absence of [Plaintiff's] exercise of his rights under the First Amendment." *Id.*

### A.     Speech Pursuant to Official Duties

As both parties point out, the main issue in this case is whether Plaintiff was acting pursuant to his official duties when he put the replacement poster on his door, and thus, whether his speech

was private speech or government speech. When a public employee makes a statement pursuant to their official job duties, he is not protected by the First Amendment, as he would if speaking as a private citizen. *Garcetti v. Ceballos*, 547 U.S. 410, 419 (2006). As pointed out by Plaintiff, speech can be considered part of one's official duties if it "owes its existence to a public employee's professional responsibilities"; is "commissioned or created" by the employer; "is part of what [the employee] was employed to do; is a task the employee "was paid to perform"; and "[has] no relevant analogue to speech by citizens who are not government employees." *Id.* at 547. Coaches, like teachers or students, do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines Independent Community School Dist.*, 393 U.S. 503, 506 (1969). Defendants argue that this District has specified that one's job duties are not limited to their formal job description, and the Court must evaluate "whether the speech is intimately connected with the speaker's job and to whom the speaker directed the speech." (*Owen v. Board of Educ. of Urbana Sch. Dist. #116*, No. 20-CV-2010, 2020 WL 12813968, at *7 (C.D. Ill. Sept. 3, 2020)).

The recent Supreme Court decision *Kennedy v. Bremerton Sch. District* further discusses this issue. *Kennedy* makes it clear that when a high school football coach engages in prayer after a high school football game, he is not engaged in speech that falls within his ordinary job duties. *See Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407 (2022). Just because a student or other staff members can see one exercising their freedom of speech does not transform private speech into government speech. *Id.* at 2425. During the football game, the coach's "prayers did not 'ow[e their] existence' to Mr. Kennedy's responsibilities as a public employee." *Id.* at 2424 (citing *Garcetti*, 547 U. S. at 421). The Court explained that while not everything a coach says in the workplace is considered government speech, one must evaluate the substance of the speech as well

6

as the circumstances around the speech to determine whether or not the speech was within one's job duties. *Kennedy*, 142 S. Ct. 2407 at 2425. After such an evaluation, the Court held Mr. Kennedy's speech to be private speech outside of his official job duties, and concluded the school violated his rights under the First Amendment by terminating him. *Id*.

Defendants argue that any of Plaintiff's personal communications to students and other staff members fell within the scope of his job duties, representing governmental speech. Defendants assert that, as Plaintiff was acting in his official job duties in placing the replacement poster on his door, he is not entitled to First Amendment protections. (Doc. 22 at 2). Additionally, Defendants argue that Plaintiff relies on a job description that is unsupported by allegations. (Doc. 22-1 at 4).

The Court does not find that Plaintiff's actions were taken in furtherance of his official job duties. In putting up the replacement poster, Plaintiff was expressing his personal views, which in no way "owed their existence" to his responsibilities as a public employee. *See Kennedy*, 142 S. Ct. 2407 at 2424. Plaintiff was not paid by the University to decorate his door or to use is to promote a particular viewpoint, he was employed to coach football. Further, ISU holds an Anti-Harassment and Non-Discrimination Policy, which states:

> "Illinois State University ... is strongly committed to the ethical and legal principal that **each member of the University Community enjoys the right to free speech**. The right of free expression and the open exchange of ideas stimulates debate, promotes creativity, and is essential to a rich learning environment... As members of the University Community, **students**... **and staff have a responsibility to respect others and show tolerance for opinions that differ from their own...**"

Under such a policy, Plaintiff should enjoy the right to express his personal viewpoint, within reason. While the opinion Plaintiff posted on his door may have been different than that of the majority, the BLM Movement was not a sanctioned school movement. Just as the ISU Athletic Department and staff were able to hang posters supporting the BLM Movement, Plaintiff had the

protected right to create and hang his own poster, supporting his own message. There was no school policy prohibiting Plaintiff decorating his door in whichever fashion he might choose. Further, Plaintiff was not required, as a term of his employment, to either refrain from decorating his door or to decorate it in a certain way. Here, Plaintiff was not acting in his official job duties when he placed the poster on his door, and therefore, his was private speech protected by the First Amendment, satisfying the first of the two elements of a *prima facie* case of retaliation. *See Samuelson,* 526 F.3d 1046 at 1053.

### B.    Motivating Factor for Employer's Action

The second step in the Samuelson test for a *prima facie* case is to evaluate the employer's motivating factors for termination. A motivating factor for employment termination "does not amount to a but-for factor" or have to be the "only factor but is rather a factor that is motivated by the [employee]'s actions." *Samuelson,* 526 F.3d at 1053 (citing *Mullin v. Gettinger,* 450 F.3d 280, 284 (7th Cir. 2006)). A plaintiff "can meet this burden by "showing that the protected speech caused, or at least played a substantial part in, the employer's decision to take adverse employment action against" him. *Id.*

Here, Plaintiff asserts that he was terminated specifically for his removing the BLM poster and replacing it with his own. The employer's stated reason for the termination was that Spack "didn't like the direction of the offense." However, in their Memorandum in Support of Motion to Dismiss, Defendants assert that the University was responding to the students' reactions to Plaintiff's speech, and not the speech itself. This termination, under *Samuelson*, is a motivating factor, as his speech "played a substantial part in" the decision to terminate him, thus satisfying the second element. *See Samuelson,* 526 F.3d at 1053. Here, Plaintiff has pled enough to support that his termination was related, directly or indirectly, to his protected speech. With regard to the

third step of a *Samuelson* analysis, Defendants do not attempt to show that the same result would have occurred had Plaintiff not replaced the poster on his door.

###     C.        Pickering Test

Both parties correctly state that if a public employee's speech is on a matter of public concern, and that employee is terminated because of that speech, that termination may be justified by the employer. *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968). *Pickering* requires the Court to "balance between the interests of the teacher, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id*. However, Plaintiff correctly points out that there is Seventh Circuit precedent mitigating against the Court evaluating the issue at this stage of litigation. *See Gustafson v. Jones*, 290 F.3d 895 (7th Cir. 2002). The court in *Gustafson* concluded:

> *Pickering* contemplates a highly fact-specific inquiry into a number of interrelated factors... *Pickering* balancing is not an exercise in judicial speculation. While it is true that in some cases the undisputed facts on summary judgment permit the resolution of a claim without a trial, that means only that the *Pickering* elements are assessed in light of a record free from material factual disputes... This is precisely what the Supreme Court did in *Connick*, where its *Pickering* analysis looked to the actual testimony of the employee's supervisor regarding the potential impact of the employee's speech and then evaluated the other evidence in the record to determine whether it supported the employer's fears. (citation omitted). We are not entitled to speculate as to what the employer might have considered the facts to be and what concerns about operational efficiencies it might have had, once the record shows what those concerns really were.

*Id*. at 909.

Because the parties have not yet had the opportunity to conduct discovery at this stage of the litigation, this Court cannot evaluate the facts under *Pickering* without engaging in speculation. While Defendants argue that it could be possible for a *Pickering* test to be conducted, this case is not ripe for disposition without a more factually developed record. While Defendants argue that the University's interests outweigh those of Plaintiff, there is not enough information to properly

weigh those interests at this stage. A *Pickering* test is improper at this time. *See Gustafson*, 290

F.3d 895 at 909. *See also Delgado v. Jones*, 282 F.3d 511, 517 (7th Cir. 2002).

       **D.**      **Qualified Immunity**

Defendants argue that Lyons and Spack are entitled to qualified immunity because state

employees who are sued in their individual capacities "are entitled to qualified immunity under

§ 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness

of their conduct was 'clearly established at the time.'" *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018).

If either prong is not satisfied, the defendant is entitled to qualified immunity. *Koh v. Ustich*, 933

F.3d 836, 844 (7th Cir. 2019).  It is often not advisable, however, to consider qualified immunity

at the pleadings stage. *See Doe v. Purdue Univ.*, 928 F.3d 652, 665 (7th Cir. 2019) (citing *Jacobs

v. City of Chicago*, 215 F.3d 758, 765 n.3 (7th Cir. 2000)) (while there is no "hard-and-fast rule"

against considering qualified immunity on the pleadings, the issue is fact-driven, and a plaintiff is

not required to include detailed factual pleadings in the complaint.). Defendant's Motion to

Dismiss is denied to with respect to the issue of qualified immunity, with leave to reassert on a

more fully developed record.

### III.   <u>CONCLUSION</u>

For the reasons set forth above, Defendant's Motion to Dismiss (Doc. 18) is DENIED.


Signed on this 11th day of August, 2022.

                                        <u>s/James E. Shadid</u>
                                        JAMES E. SHADID
                           UNITED STATES DISTRICT JUDGE